UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA      :
            :

    - v. -           :    <u>INDICTMENT</u>
            :
MARIA LUISA ESTRELLA JAIDI,    :    19 Cr. 890
ABDESLAM JAIDI, and           :
RAMON SINGSON ESTRELLA,      :
  a/k/a "Ramon Miguel Estrella,"  :
  a/k/a "Ting Estrella,"      :
            :

            Defendants.  :

- - - - - - - - - - - - - - - - - -X

## COUNT ONE
**(Conspiracy to Commit Offenses and to Defraud the United States)**

The Grand Jury charges:

### Background on A Visas and G Visas

1.   At all times relevant to this Indictment:

    a.  In order to lawfully enter and remain in the United States foreign nationals were required to obtain a visa. The A-2 visa category applied to diplomats and other foreign government officials traveling to the United States to engage solely in official activities on behalf of their national government; for example, a full-time employee assigned by a foreign government to work at an embassy or consulate in the United States.

    b.  The G-1 visa category applied to diplomats, government officials, and employees who worked for designated

international organizations in the United States; for example, a permanent mission member of a recognized government to the United Nations.

        c.   To apply for an A-2 or a G-1 visa, an applicant was required to submit, among other documents, a nonimmigrant visa application and a diplomatic note as written confirmation of the applicant's status and his or her official purpose for coming to the United States.

        d.   Diplomats and foreign government officials who worked at an embassy or consulate in the United States could obtain A-3 visas for their personal employees, attendants, and domestic workers. Diplomats and foreign government officials who worked for international organizations in the United States could obtain G-5 visas for their personal employees, attendants, and domestic workers.

    2.   At times relevant to this Indictment, in order to obtain an A-3 or G-5 visa, an applicant was required to submit, among other items, an employment contract, signed by both the employer and the employee, that included the following items, among others:

        a.   a description of the work to be performed;

b.    the employee's general hours of work, including the number of hours per week;

c.    a statement that the domestic employee would be provided a minimum of one full day off each week;

d.    the number of paid holidays, sick days, and vacation days the domestic employee would be provided;

e.    the hourly wage to be paid to the domestic employee, which must be at least the greater of the minimum wage under U.S. federal, state, or local law;

f.    a statement that the employer agreed to abide by all federal, state, and local laws in the United States;

g.    a statement that the employer agreed not to take the domestic worker's passport and visa for any reason; and

h.    a statement that the domestic worker's presence in the employer's residence would not be required except during working hours.

## The Defendants

3.    At all times relevant to this Indictment, MARIA LUISA ESTRELLA JAIDI ("ESTRELLA JAIDI"), the defendant, was a Filipino national and a resident of the United States.  From in or about 1980 through in or about 2016, ESTRELLA JAIDI was married to ABDESLAM JAIDI, the defendant.

3

4.    At all times relevant to this Indictment, ABDESLAM JAIDI ("JAIDI"), the defendant, was a Moroccan national and a resident of the United States.    At various times relevant to this Indictment, JAIDI was a diplomatic agent accredited to either the Consulate General of the Kingdom of Morocco in New York, New York (the "Moroccan Consulate") or the Permanent Mission of the Kingdom of Morocco to the United Nations in New York, New York (the "Moroccan Mission").

5.    At all times relevant to this Indictment, RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," ("ESTRELLA"), the defendant, was a Filipino national. ESTRELLA resided in the Philippines and is the brother of MARIA LUISA ESTRELLA JAIDI, the defendant.

## Overview of the Conspiracy

6.    From at least in or about 2006, up to and including at least in or about 2019, MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, participated in a scheme to fraudulently procure A-2, A-3, G-1, and G-5 visas for more than 10 foreign domestic workers (collectively, the "Domestic Workers"), who were from the Philippines and Morocco, among other countries.    In order to fraudulently obtain the

visas, ESTRELLA JAIDI, JAIDI, and ESTRELLA caused some of the Domestic Workers to falsely state in their visa applications that they would be employed as administrative or technical staff at the Moroccan Consulate or the Moroccan Mission.  In addition, ESTRELLA JAIDI, JAIDI, and ESTRELLA caused some of the Domestic Workers to submit fraudulent employment contracts to the U.S. Department of State (the "State Department") in connection with their visa applications.  Once the Domestic Workers arrived in the United States, ESTRELLA JAIDI and JAIDI employed the workers as their personal drivers, domestic helpers, farmhands, and assistants at a residence in Bronxville, New York (the "Bronxville Residence") and at a farm in Ancramdale, New York (the "Farm").  ESTRELLA helped recruit several of the Domestic Workers from the Philippines to work for ESTRELLA JAIDI and JAIDI in the United States.

### Means and Methods of the Conspiracy

7.   Among the means and methods by which MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, carried out the conspiracy were the following:

a.   Before a Domestic Worker applied for a visa to come to the United States, ESTRELLA JAIDI or JAIDI typically

interviewed the Domestic Worker abroad. Some of the Domestic Workers who were from the Philippines also met with ESTRELLA. During those interviews, ESTRELLA JAIDI, JAIDI, and ESTRELLA generally informed the prospective hire that he or she would be employed in a domestic capacity at the Bronxville Residence or the Farm, and specified the salary the worker would receive.

b.   ESTRELLA JAIDI, JAIDI, and ESTRELLA provided, and caused their co-conspirators to provide, some of the Domestic Workers with false information to include in their visa applications, including, among other things, that the Domestic Workers had been hired as administrative or technical staff of the Moroccan Consulate or the Moroccan Mission, when, in truth and in fact, ESTRELLA JAIDI and JAIDI had hired the Domestic Workers as their personal domestic employees. In addition, ESTRELLA JAIDI, JAIDI, and ESTRELLA directed some of the Domestic Workers to falsely represent to State Department officials that they would be working at the Moroccan Consulate or the Moroccan Mission, and that they would be earning salaries that were much higher than their true salaries.

c.   ESTRELLA JAIDI, JAIDI, and ESTRELLA provided, and caused their co-conspirators to provide, some of the Domestic Workers with fraudulent employment contracts to submit to the

State Department in connection with their visa applications. The fraudulent employment contracts were created at JAIDI's office in New York, New York and at the Moroccan Consulate. Among other things, the employment contracts generally specified a salary in compliance with minimum wage law and stated that the employee would receive medical insurance, dental insurance, and paid sick leave. Some of the employment contracts also provided, among other things, that the employee would work as administrative or technical staff at the Moroccan Consulate or the Moroccan Mission; would work five days a week for eight hours a day; would have the ability to leave the employer's residence when not working; and/or would retain possession of his or her passport at all times.

        d.    Once the Domestic Workers began working in the United States, ESTRELLA JAIDI and JAIDI paid the Domestic Workers far below both the minimum wage required by law and the salaries set forth in their employment contracts. At various times relevant to this Indictment, ESTRELLA JAIDI and JAIDI paid some of the Domestic Workers as little as $500 per month. In addition, in order to conceal their scheme, ESTRELLA JAIDI and JAIDI issued monthly paychecks to some of the Domestic Workers for the approximate amounts set forth in their employment

contracts and then required those workers to deposit their paychecks in their respective bank accounts, wait for the checks to clear, withdraw a portion of the paycheck in cash, and return the cash to ESTRELLA JAIDI or to JAIDI's office in New York, New York.

        e.    Notwithstanding provisions in some of the Domestic Workers' employment contracts stating that the employee would work five days a week for eight hours a day, ESTRELLA JAIDI and JAIDI regularly compelled each of the Domestic Workers to work far in excess of 40 hours per week without a regular day off.

        f.    ESTRELLA JAIDI and JAIDI did not provide some of the Domestic Workers with medical insurance, dental insurance, or paid sick leave, notwithstanding provisions in their employment contracts guaranteeing such benefits.

        g.    ESTRELLA JAIDI and JAIDI required some of the Domestic Workers to surrender their passports in order to make it more difficult for the Domestic Workers to leave their employment.

### Statutory Allegations

    8.    From at least in or about 2006, up to and including in or about 2019, in the Southern District of New York and

elsewhere, MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to defraud the United States of America and an agency thereof, to wit, the State Department, and to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 1001 and 1546(a).

9.    It was a part and an object of the conspiracy that MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, and others known and unknown, knowingly defrauded the United States by impairing, obstructing, and defeating the lawful functions of a department or agency of the United States, to wit, the State Department's function to enforce the requirement that foreign nationals seeking entry into the United States provide truthful and accurate information to the government.

10.    It was a further part and object of the conspiracy that MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, and others known and unknown, in a

matter within the jurisdiction of the executive branch, knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device material facts; made materially false, fictitious, and fraudulent statements and representations; and made and used false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, the defendants participated in a scheme to cause the submission to the State Department of visa applications, and employment contracts and other documents in support of visa applications, which the defendants knew to contain materially false and fraudulent statements, and to cause other individuals to make materially false and fraudulent statements to State Department officials.

11.   It was a further part and object of the conspiracy that MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, and others known and unknown, knowingly obtained visas knowing such visas to have been procured by means of any false claim or statement, and to have been otherwise procured by fraud or unlawfully obtained, to wit, the defendants participated in a scheme to obtain visas for domestic workers by causing the submission to the State

Department of visa applications, and employment contracts and other documents in support of visa applications, which the defendants knew to contain false and fraudulent statements.

### **Overt Acts**

12. In furtherance of the conspiracy and to effect the illegal object thereof, MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. In or about 2010, JAIDI caused a Filipino national ("Domestic Worker-1") to submit to the State Department a fraudulent employment contract in connection with Domestic Worker-1's visa application that falsely stated, among other things, the salary that Domestic Worker-1 would be paid.

b. In or about 2013, ESTRELLA JAIDI and ESTRELLA caused a Filipino national ("Domestic Worker-2") to submit to the State Department a fraudulent employment contract in connection with Domestic Worker-2's visa application that falsely stated, among other things, the nature of the work that Domestic Worker-2 would perform and the salary that Domestic Worker-2 would be paid.

c.   In or about 2015, ESTRELLA offered to help ESTRELLA JAIDI fraudulently obtain a visa for a Filipino national (the "Prospective Domestic Worker").

d.   In or about 2016, JAIDI arranged for a Filipino national ("Domestic Worker-3") to submit to the State Department a visa application containing false information and, in connection with that visa application, a fraudulent employment contract that falsely stated, among other things, the nature of the work that Domestic Worker-3 would perform and the salary that Domestic Worker-3 would be paid.

e.   In or about 2016, ESTRELLA JAIDI asked a co-conspirator not named as a defendant herein for assistance in fraudulently obtaining a visa for the Prospective Domestic Worker.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Induce Aliens to Illegally Come to, Enter, and Reside in the United States)

The Grand Jury further charges:

13.   The allegations contained in paragraphs 1 through 7 and 12 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

14.   From at least in or about 2006, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, and others known and unknown, knowingly engaged in a conspiracy to encourage and induce aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was or would be in violation of law, to wit, the defendants encouraged and induced foreign nationals to come to and enter the United States using fraudulently obtained visas and to reside in the United States under circumstances that were not authorized by their visas.

(Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(A)(v)(I).)

## FORFEITURE ALLEGATION
### (Count One)

15.   As a result of committing the offense alleged in Count One of this Indictment, MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6), all conveyances, including any vessel,

vehicle, or aircraft, used in the commission of said offense; all property, real and personal, that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; and all property, real or personal, that was used to facilitate, or was intended to be used to facilitate, the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

## FORFEITURE ALLEGATION
### (Count Two)

16. As a result of committing the offense alleged in Count Two of this Indictment, MARIA LUISA ESTRELLA JAIDI, ABDESLAM JAIDI, and RAMON SINGSON ESTRELLA, a/k/a "Ramon Miguel Estrella," a/k/a "Ting Estrella," the defendants, shall forfeit to the United States, pursuant to Title 8, United States Code, Section 1324(b) and Title 18, United States Code, Section 982(a)(6), all conveyances, including any vessel, vehicle, or aircraft, used in the commission of said offense, and all property traceable to such conveyances; the gross proceeds of said offense, and all property traceable to such proceeds; all property, real and personal, that constitutes or is derived from or is traceable to the proceeds obtained

14

directly or indirectly from the commission of the offense; and all property, real or personal, that was used to facilitate, or was intended to be used to facilitate, the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense and the following specific property:

      a.   all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at ████████████████████████████ ████ ; and

      b.   all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at ████████████████████████████ ████ .

### Substitute Assets Provision

17.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third person;

15

c.   has   been   placed   beyond   the   jurisdiction   of   the
Court;

d.   has been substantially diminished in value; or

e.   has   been   commingled   with   other   property   which
cannot be subdivided without difficulty;

it   is   the   intent   of   the   United   States,   pursuant   to   Title   21,
United   States   Code,   Section   853(p)   and   Title   28,   United   States
Code,   Section   2461(c),   to   seek   forfeiture   of   any   other   property
of   the   defendants   up   to   the   value   of   the   above   forfeitable
property.

> (Title 8, United States Code, Section 1324;
> Title 18, United States Code, Section 982;
> Title 21, United States Code, Section 853; and
> Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

16

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

v.

### MARIA LUISA ESTRELLA JAIDI,
### ABDESLAM JAIDI, and
### RAMON SINGSON ESTRELLA,
### a/k/a "Ramon Miguel Estrella,"
### a/k/a "Ting Estrella,"

**Defendants.**

### INDICTMENT

19 Cr.

(18 U.S.C. §§ 371, 1001, 1546; 8 U.S.C.
§ 1324(a)(1)(A)(iv), (v)(I))

GEOFFREY S. BERMAN
United States Attorney

Foreperson